UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

JOSE A. STRADA,

                      Plaintiff,                **MEMORANDUM & ORDER**
                                                    11-CV-5735 (MKB)

        v.

CITY OF NEW YORK and NEW YORK CITY
JOHN DOE POLICE OFFICERS,

                      Defendants.

-----------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

      On November 22, 2011, Plaintiff Jose A. Strada commenced the above-captioned action

against Defendants the New York City Police Department ("NYPD"), the New York City

Department of Correction ("DOC"), the City of New York ("City"), and New York City John

Doe Police Officers, alleging claims of excessive force, false arrest and imprisonment, "delay

and denial of medical treatment and failure to protect while in custody," failure to intercede,

conspiracy, and municipal liability pursuant to 42 U.S.C. § 1983 for claims arising out of his

November 7, 2009 arrest.  Plaintiff also asserts state law claims of gross negligence and

negligence, assault and battery, false arrest and false imprisonment, malicious prosecution, abuse

of process, negligent hiring and retention, and negligence for failure to care, protect, and obtain

medical treatment for Plaintiff.  Plaintiff seeks ten million dollars in damages, punitive damages,

costs, and any other relief deemed appropriate by the Court.  Only the City and the New York

City John Doe Police Officers remain as Defendants.  Before the Court are (1) Plaintiff's motion

to amend the Complaint and (2) the City's motion for summary judgment.  For the reasons set

forth below, the Court grants the City's motion for summary judgment and denies Plaintiff's motion to amend the Complaint.

## I. Background

### a. Facts

The following facts are taken from the Complaint.[1]  On or about November 7, 2009, at approximately 8:00 p.m., Plaintiff was in the vicinity of 172nd Street and 109th Avenue in Jamaica, Queens.  (Compl. ¶ 14.)  Plaintiff was approached, stopped and arrested by two New York City John Doe Police Officers.  (*Id*. ¶ 15.)  Plaintiff was forcefully knocked to the ground, pounced upon, held down, surrounded, and detained by said officers.  (*Id*.)  While "in the process of purportedly taking . . . [P]laintiff into custody," the officers punched, kicked and beat Plaintiff's body and head with their fists and firearms.  (*Id*.)  They continued punching, kicking, "attacking and brutalizing" Plaintiff while he was on the ground.  (*Id*.)  Plaintiff did not resist.  (*Id*.)  While he was on the ground, Plaintiff was handcuffed.  (*Id*.)  Two more John Doe Police Officers arrived on the scene, and all of the officers continued punching and kicking Plaintiff.  (*Id*.)  Plaintiff became unconscious and lay bleeding on the ground.  (*Id*.)  Plaintiff was subsequently arrested and imprisoned.  (*Id*.)

Plaintiff was taken to the 103rd Precinct.  (*Id.* ¶ 16.)  While in custody, Plaintiff repeatedly requested medical attention and assistance.  (*Id*.)  He was eventually taken to the Queens Hospital Center, where he was treated for a nasal bone fracture.  (*Id*.)  Plaintiff also suffered from facial trauma, lacerations, permanent neurological damage, dizzy spells, hearing loss, repeated nightmares, slow-slurred speech and blurred vision as a result of this incident.

---

[1]  Neither party submitted a statement of facts concerning the underlying events that gave rise to the instant action.  The Court draws from the Complaint to provide context for the resolution of the instant motions.

(*Id.*)  On November 9, 2009, Plaintiff appeared before a state court judge and was released from custody on his own recognizance.  (*Id.*)

**b.  Procedural history**

Discovery in this action closed on February 28, 2013.  (Minute Entry dated Dec. 10, 2012.)  Plaintiff requested an extension of the discovery deadline which was denied by Magistrate Judge Cheryl Pollak.  (Docket Entry No. 20.)  On March 5, 2013, Plaintiff requested that Judge Pollak reconsider her decision and also expressed his intent to seek leave to amend the Complaint to name previously unnamed police officers.  (Docket Entry No. 23.)  By Order dated March 25, 2013, Judge Pollak denied Plaintiff's request for reconsideration and denied Plaintiff's request to amend the Complaint without prejudice to re-file pending the outcome of the City's motion for summary judgment.  (Docket Entry No. 26.)

On April 16, 2013, Plaintiff moved to vacate Judge Pollak's March 25, 2013 Order. (Docket Entry No. 28.)  By Memorandum and Order dated May 21, 2013, the Court affirmed Judge Pollak's March 25, 2013 Order in its entirety.  (Docket Entry No. 31)  At a hearing on May 21, 2013, the Court (1) dismissed all claims against the NYPD and DOC,[2] (2) dismissed Plaintiff's state law claims,[3] (3) granted the parties leave to brief whether Plaintiff had presented sufficient evidence to sustain his municipal liability claim and whether he should be allowed to amend the Complaint to name the individual officers.  (Minute Entry dated May 21, 2013.)

---

[2]  The NYPD and DOC are non-suable entities.  *See* N.Y.C. Charter § 396 ("All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."); *Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007) (NYPD is not a suable entity); *Vatansever v. New York City*, 210 F. App'x 26, 26 (2d Cir. 2006) (DOC is not a suable entity); *Maier v. New York City Police Dep't*, No. 08-CV-5104, 2009 WL 2915211, at *2 (E.D.N.Y. Sept. 1, 2009) (dismissing all claims against NYPD and DOC because they are not suable entities).

[3]  Plaintiff's state law claims were dismissed as time barred.

## II.  Discussion

### a.  Standards of Review

#### i.  Summary Judgment

Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Bronzini v. Classic Sec., L.L.C.*, --- F. App'x ---, ---, 2014 WL 943933, at *1 (2d Cir. Mar. 12, 2014); *Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013); *Kwong v. Bloomberg*, 723 F.3d 160, 164– 65 (2d Cir. 2013); *Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 174 (2d Cir. 2012).  The role of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 162 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  A genuine issue of fact exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff."  *Liberty Lobby*, 477 U.S. at 252.  The "mere existence of a scintilla of evidence" is not sufficient to defeat summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff."  *Id.*  The court's function is to decide "whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party."  *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000).  Even when a motion for summary judgment proceeds unopposed, a court "may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial."  *Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citation and internal quotation marks omitted).

### ii. Amendment of a complaint

The Federal Rules of Civil Procedure provide that courts "should freely give leave" to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). The Second Circuit has stated that "[t]his permissive standard is consistent with our strong preference for resolving disputes on the merits." *Williams v. Citigroup Inc.*, 659 F.3d 208, 212–13 (2d Cir. 2011) (citation omitted). Leave to amend should be given "absent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 283 (2d Cir. 2000); *see also Couloute v. Ryncarz*, No. 11-CV-5986, 2012 WL 541089, at *3 (S.D.N.Y. Feb. 17, 2012) (quoting *Monahan*, 214 F.3d at 283). However, motions to amend "should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party." *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008); *Monahan*, 214 F.3d at 283. An amendment is futile if the proposed claim could not survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (citing *Dougherty v. North Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002)).

### b. Motion for Summary Judgment

Defendants argue that Plaintiff has failed to identify any municipal policy or custom and consequently, cannot establish a causal connection between any such policy or custom and Plaintiff's alleged constitutional violations. (Def. Mem. 5.) Plaintiff failed to respond to Defendant's summary judgment motion.

In order to sustain a claim for relief pursuant to § 1983 against a municipal defendant, a plaintiff must show the existence of an official policy or custom that caused injury and a direct

causal connection between that policy or custom and the deprivation of a constitutional right. *Monell v. Dep't of Social Servs. of City of N.Y.*, 436 U.S. 658, 694–95 (1978) ("[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983."); *see Torraco v. Port Auth. of N.Y. & N.J.*, 615 F.3d 129, 140 (2d Cir. 2010) ("[T]o hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." (alteration in original) (quoting *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007))). A policy or custom may be established by any of the following: (1) a formal policy officially endorsed by the municipality; (2) actions or decisions made by municipal officials with decision-making authority; (3) a practice so persistent and widespread that it constitutes a custom through which constructive notice is imposed upon policymakers; or (4) a failure by policymakers to properly train or supervise their subordinates, such that the policymakers exercised "deliberate indifference" to the rights of the plaintiff. *See Parker v. City of Long Beach*, --- F. App'x ---, 2014 WL 1507707 (2d Cir. Apr. 18, 2014), *as amended*, (Apr. 21, 2014) (failure to train); *Matusick v. Erie Cnty. Water Auth.*, --- F.3d ---, 2014 WL 700718 (2d Cir. Feb. 25, 2014) (widespread and persistent practice); *Hines v. Albany Police Dep't*, 520 F. App'x 5, 7 (2d Cir. 2013) (actions of policymakers); *Schnitter v. City of Rochester*, --- F. App'x ---, 2014 WL 494893 (2d Cir. Feb. 7, 2014) (failure to train or supervise); *Missel v. Cnty. of Monroe*, 351 F. App'x 543, 545 (2d Cir. 2009) (formal policy and act of a person with policymaking authority for the municipality).

Here, based on the allegations in the Complaint, Plaintiff bases his municipal liability

claim on the actions of "supervisory personnel" at the 103rd Precinct who had "oversight responsibility for the more junior New York City Police Officers." (Compl. ¶ 36.) These supervisory officers were responsible for the training, instruction, supervision and discipline of the junior officers who "brutalized" Plaintiff. (*Id.*) Plaintiff alleges that these supervisory police officers knew or should have known that the "conduct of the junior officers against . . . [P]lainitff would likely occur and would be brutal and unlawful." (*Id.* ¶ 37.) Plaintiff also alleges that it was the City's custom, policy and practice that "permitted, condoned and contributed" to the John Doe Police Officers' "brazen acts of brutality." (*Id.* ¶ 10.) Plaintiff further alleges that the City was negligent in training, hiring and supervising the John Doe Officers. (*Id.* ¶ 62.) As discussed below, these allegations are insufficient to create a material issue of fact to defeat summary judgment.

Although unclear, Plaintiff appears to allege that the John Doe "supervisory police officers" are policymakers for purposes of municipal liability. To the extent that Plaintiff is attempting to make such a claim, it fails due to Plaintiff's failure to provide any evidence that the "supervisory police officers" had "final policymaking authority in the particular area involved." *Jeffes v. Barnes*, 208 F.3d 49, 57 (2d Cir. 2000); *see also Cobbs v. City of Newburgh-City Council*, 546 F. App'x 34, 36 (2d Cir. 2013) (finding that the defendant-officers were not "policymakers with final authority to establish municipal policy with respect to the action ordered" (citation and internal quotation marks omitted)); *Vasquez v. City of New York*, No. 11-CV-3024, 2013 WL 5519981, at *12 (E.D.N.Y. Sept. 30, 2013) (finding that the plaintiff failed to show that an NYPD sergeant qualified as a policymaker "simply because he ha[d] authority to verify arrests").

Similarly, absent any corroborative evidence, circumstantial or otherwise, no reasonable

jury could conclude that Plaintiff's arrest and "brutalization" resulted from a formal "custom, policy or practice," nor could a jury conclude that any policymaker was deliberately indifferent to the risk of constitutional harm when the City hired, trained and supervised the John Doe Officers. *See Cucuta v. New York City*, No. 13-CV-558, 2014 WL 1876529, at *13 (S.D.N.Y. May 9, 2014) (granting summary judgment where the plaintiff fail to "present any *evidence* from which to infer the existence of [a] municipal polic[y] or practice[]"); *Farrow v. City of Syracuse*, No. 12-CV-1401, 2014 WL 1311903, at *8 (N.D.N.Y. Mar. 31, 2014) ("While circumstantial evidence as to training policies is sufficient to withstand a motion to dismiss, at summary judgment 'a plaintiff is expected to proffer evidence from which a reasonable factfinder could conclude that the training program was actually inadequate, and that the inadequacy was closely related to the violation.'" (citation omitted) (quoting *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 130 n.8 (2d Cir. 2004))); *DiGennaro v. Town of Gates Police Dep't*, No. 07-CV-6426, 2013 WL 3097066, at *14 (W.D.N.Y. June 18, 2013) (dismissing a municipal liability claim based on a single unproven allegation of excessive force). Therefore, the City's motion for summary judgment is granted and all claims against it are dismissed.

### c. Motion to amend Complaint

Plaintiff seeks to amend the Complaint to plead claims of excessive force and unlawful arrest against Officer Jason Barr, Sergeant John Toal and Sergeant Hugh Black. Defendant argues that any amendment to the Complaint would be futile because the statute of limitations bars all claims against any individual defendant. (Def. Mem. 8.) Plaintiff argues that his claims against the proposed defendants will relate back to the date of the original Complaint pursuant to New York's relation back doctrine and Rule 15(c) of the Federal Rules of Civil Procedure. (Pl. Mem. 7.) As explained below, Plaintiff's claims against the proposed individual defendants

would not be timely under New York or federal law and the Court therefore denies Plaintiff's motion to amend the Complaint.

There is no dispute that the statute of limitations on Plaintiff's excessive force and false arrest claims expired on November 7, 2012, three years after the date of Plaintiff's arrest. *See Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009) ("The statute of limitations for claims brought under Section 1983 is governed by state law, and in this case is the three-year period for personal injury actions under New York State law.") Therefore, whether Plaintiff's claims against the proposed defendants are time-barred will depend on whether Plaintiff's proposed amendment can relate back to the filing of the original Complaint.

### i. Applicable law

Rule 15(c)(1)(A) of the Federal Rules of Civil Procedure allows an amendment to a pleading to relate back to the date of the original pleading when the law that provides the applicable statute of limitations allows relation back. Fed. R. Civ. P. 15(c)(1)(A). Courts must examine the "controlling *body* of limitations law," and apply state law if it provides "a more forgiving principle of relation back than the one provided" by Rule 15(c). *Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013) (quoting Fed. R. Civ. P. 15, Advisory Comm. Notes 1991). Since the parties fully briefed this motion, the Second Circuit has made clear that New York law provides a more forgiving principle of relation back in the John Doe context, compared to the federal relation back doctrine under Rule 15(c). *Hogan*, 738 F.3d at 518. As a result, the Court first examines whether Plaintiff's proposed claims against the individual officers would be made timely through application of New York's John Doe procedural rule, § 1024 of the New York Civil Practice Law and Rules ("CPLR").

### 1. Section 1024 of the CPLR

Under § 1024 of the CPLR, a plaintiff may commence a lawsuit against John Doe defendants and toll the statute of limitations as to the unnamed defendants provided that the plaintiff meets two requirements: (1) the plaintiff "exercise[d] due diligence, prior to the running of the statute of limitations, to identify the defendant by name;" and (2) the plaintiff "describe[d] the John Doe party in such form as will fairly apprise the party that he is the intended defendant."[4] *Hogan*, 738 F.3d at 519 (alteration, citation and internal quotation marks omitted). Due diligence in this context requires that a plaintiff "show that he or she made timely efforts to identify the correct party before the statute of limitations expired." *Justin v. Orshan*, 788 N.Y.S.2d 407, 408 (App. Div. 2005) (citation and internal quotation marks omitted); *see also Luckern v. Lyonsdale Energy Ltd. P'ship*, 654 N.Y.S.2d 543, 545 (App. Div. 1997) ("In order to employ the procedural mechanism made available by CPLR 1024, the plaintiff must show that he made genuine efforts to ascertain the defendants' identities prior to the running of the Statute of Limitations." (alteration, citation, and internal quotation marks omitted)). If these conditions are satisfied, the statute of limitations is tolled for up to 120 days during which the plaintiff must identify the unknown defendants and serve process upon them. *See JCG v. Ercole*, No. 11-CV-6844, 2014 WL 1630815, at *13 (S.D.N.Y. Apr. 24, 2014) ("If a plaintiff fulfills these conditions, he 'must then ascertain the identity of unknown [John] Doe parties, and . . . serve process upon them, within 120 days from filing [the original complaint].'" (alterations in original) (quoting *Williams v. United States*, No. 07-CV-3018, 2010 WL 963474, at *12

---

[4] The text of the CPLR only provides for an extension of the period in which service of process must be made, however, New York courts, and district courts interpreting the CPLR, understand § 1024 to also toll the statute of limitations. *See Wilson v. City of New York*, No. 03-CV-2495, 2006 WL 2528468, at *3 n.11 (S.D.N.Y. Aug. 31, 2006) (discussing this point); *Herbert v. Gabel Equip. Corp.*, 507 N.Y.S.2d 214 (App. Div. 1986).

(S.D.N.Y. Feb. 25, 2010))); *Drake v. Lab. Corp. of Am. Holdings*, No. 02-CV-1924, 2009 WL 2867901, at *6 (E.D.N.Y. Sept. 3, 2009) (noting that § 1024 "would indeed have stopped the three-year clock, but only if Drake were able to identify Northwest and Kuntz, and effect service on them within 120 days"), *reconsideration denied*, No. 02-CV-1924, 2010 WL 743056 (E.D.N.Y. Mar. 4, 2010), *aff'd*, 417 F. App'x 84 (2d Cir. 2011); *Wilson v. City of New York*, No. 03-CV-2495, 2006 WL 2528468, at *3 n.11 (S.D.N.Y. Aug. 31, 2006) (noting that the CPLR "rule provides only for a 120-day extension" of the statute of limitations); *Bumpus v. New York City Transit Auth.*, 883 N.Y.S.2d 99, 105 (App. Div. 2009) (noting that plaintiffs commencing suit by filing, pursuant to § 1024, are in the "unenviable position" of having to identify John Doe defendants and serve process upon them within 120 days of filing); *Tucker v. Lorieo*, 738 N.Y.S.2d 33, 35 (App. Div. 2002) ("Once commenced by filing, [pursuant to § 1024,] the statute was tolled for 120 days pursuant to CPLR 306-b.").

Here, Defendants provided Plaintiff with the names of the officers involved in Plaintiff's arrest prior to the expiration of the statute of limitations and close of discovery, (Declaration of Carolyn K. Depoian dated June 21, 2012 ("Depoian Decl.") ¶ 26), yet Plaintiff did not attempt to amend the Complaint to add any individual officers prior to the expiration of the statute of limitations. Magistrate Judge Pollak ordered the parties to proceed with depositions on June 8, 2012, September 20, 2012, and on December 10, 2012. (Docket Entries Nos. 11–13.) Plaintiff never served the City with any notices of deposition nor did Plaintiff attempt in any way to conduct deposition discovery. (Depoian Decl. ¶ 8.) Not until March 5, 2013, did Plaintiff seek leave to amend the Complaint, nearly four months after the statute of limitations expired and after the close of discovery. (Docket Entry No. 23.) While Plaintiff contends that he did not learn the identity of "*ALL*" of the relevant officers until on or about October 3, 2012, Plaintiff

still had over a month from that date to amend the Complaint before the statute of limitations

expired.  In support of his motion, Plaintiff states that defense counsel "*absolutely knew* that

these defendants would be added to the [C]omplaint on February 16, 2012 and on October 3,

2012."  (Pl. Mem. 6.)  Despite this apparent shared knowledge concerning the parties to be added

to this action, Plaintiff did not actually act to amend the Complaint.  Based on this record,

Plaintiff cannot rely on § 1024 to toll the statute of limitations since he learned the true identities

of the John Doe defendants *prior* to the expiration of the statute of limitations.  Section 1024

provides no recourse in such an instance.  *See Bumpus*, 883 N.Y.S.2d at 104 ("The use of CPLR

1024 presents many pitfalls.  One pitfall is that parties are not to resort to the 'Jane Doe'

procedure unless they exercise due diligence, prior to the running of the statute of limitations, to

identify the defendant by name and, despite such efforts, *are unable to do so*." (emphasis added)

(citations omitted)); *cf. Opiela v. May Indus. Corp.*, 781 N.Y.S.2d 353, 354 (App. Div. 2004)

(finding § 1024 inapplicable where the plaintiff "could have obtained the [defendants'] names

before expiration of the three-year limitations period").

### 2.  Relation back

### A.  Section 203 of the CPLR

Under New York law, in addition to § 1024 allowing for a *nunc pro tunc* John Doe

substitution, a party seeking relation back as to a previously unknown defendant may also utilize

§ 203 of the CPLR, New York's general relation back statute.[5]  *See Bumpus*, 883 N.Y.S.2d at

---

[5]  In *Hogan v. Fischer*, the Second Circuit held that § 1024 of the CPLR, which only
concerns John Doe substitutions, is more forgiving than Rule 15(c)(1)(C).  *Hogan*, 738 F.3d 509,
518 (2d Cir. 2013).  The Second Circuit has not decided whether Rule 15(c)(1)(C) is more or less
forgiving than New York's general relation back law, § 203 of the CPLR.  Courts in this Circuit
have either found § 203 to be more forgiving or assessed both laws and applied the more
forgiving of the two.  *See Fisher v. County of Nassau*, No. 10-CV-0677, 2011 WL 4899920,
at *4 (E.D.N.Y. Oct. 13, 2011) (applying both the federal and New York law, and finding them

106 (noting that the CPLR provides other methods, beyond a "good cause" or "interest of justice" extension by which a party can gain additional time to serve process upon John Doe defendants).

Under § 203, New York courts allow claims against a new defendant to "relate back to timely filed pleadings when (1) the new claim arose out of the same conduct, transaction or occurrence as the original allegations; (2) the new party is united in interest with the original defendant, and by reason of that relationship can be charged with such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits; and (3) the new party knew or should have known that, but for a mistake as to the identity of the proper parties, the action would have been brought against him as well." *JCG*, 2014 WL 1630815, at *15 (quoting *Fisher v. County of Nassau*, No. 10-CV-0677, 2011 WL 4899920, at *5 (E.D.N.Y. Oct. 13, 2011)); *see also Hunter v. Deutsche Lufthansa AG*, No. 09-CV-3166, 2013 WL 752193, at *5 (E.D.N.Y. Feb. 27, 2013) (listing these prongs); *Maccharulo v. Gould*, 643 F. Supp. 2d 587, 597 (S.D.N.Y. 2009) (same) (quoting *Amaya v. Garden City Irrigation, Inc.*, 645 F. Supp.

_____

both unavailing); *Thomas v. Cassleberry*, No. 03-CV-6394L, 2010 WL 1492300, at *3 (W.D.N.Y. Jan. 22, 2010) ("New York State law, by contrast, construes the issue of mistake more liberally than federal law."), *report and recommendation adopted*, No. 03-CV-6394L, 2010 WL 1492313 (W.D.N.Y. Apr. 13, 2010); *Dooley v. Columbia Presbyterian Med. Ctr.*, No. 06-CV-5644, 2009 WL 129941, at *4 (S.D.N.Y. Jan. 16, 2009) (noting that although the federal and New York relation back tests are similarly worded, the third element under New York law is "more flexible"); *Abdell v. City of New York*, No. 05-CV-8453, 2006 WL 2620927, at *5 (S.D.N.Y. Sept. 12, 2006) ("New York relation back doctrine, however, is more generous than federal relation back doctrine."); *Sloane v. Town of Greenburgh*, No. 01-CV-11551, 2005 WL 1837441, at *3 (S.D.N.Y. July 27, 2005) (finding that the two laws are similar but noting that the "requirement in the second prong of the New York rule . . . is arguably more lenient than the parallel federal provision"). The Court will apply both rules and give Plaintiff the benefit of whichever is more forgiving. *See Laureano v. Goord*, No. 06-CV-7845, 2007 WL 2826649, at *5 (S.D.N.Y. Aug. 31, 2007) ("Whether a claim relates back should be analyzed under both federal and state law, and whichever law that affords a more forgiving principle of relation back should be utilized."), *report and recommendation adopted*, No. 06-CV-7845, 2007 WL 2852770 (S.D.N.Y. Sept. 28, 2007).

2d 116, 121 (E.D.N.Y. July 13, 2009)). "The 'linchpin' of the relation back doctrine is notice to the defendant within the applicable limitations period." *Kirk ex rel. Kirk v. Univ. OB-GYN Associates, Inc.*, 960 N.Y.S.2d 793, 795 (App. Div. 2013) (quoting *Buran v. Coupal*, 87 N.Y.2d 173, 180 (1995)); *Stevens v. Winthrop S. Nassau Univ. Health Sys., Inc.*, 932 N.Y.S.2d 514, 516 (App. Div. 2011) (quoting *Alvarado v. Beth Israel Med. Ctr.*, 876 N.Y.S.2d 147, 149 (App. Div. 2009)).

Here, there is no question that the new claims, excessive force and false arrest, arise from the same conduct set forth in the original Complaint. Therefore, Plaintiff satisfies the first prong of New York's relation back test. Plaintiff's ability to satisfy the second prong is less clear. "[T]he question of unity of interest is to be determined from an examination of (1) the jural relationship of the parties whose interests are said to be united and (2) the nature of the claim asserted against them by the plaintiff." *Amaya*, 645 F. Supp. 2d at 122 (citing *Connell v. Hayden*, 443 N.Y.S.2d 383, 393 (App. Div. 1981)). "In other words, when because of some legal relationship between the defendants they necessarily have the same defenses to the plaintiff's claim, they will stand or fall together and are therefore united in interest." *Connell*, 443 N.Y.S.2d at 393. There is sparse caselaw concerning the relationship of a municipality and employee-officers with respect to New York's relation back doctrine, and the Court is aware of only one case holding that an officer is united in interest with a municipality in the § 1983 context. *See Llerando-Phipps v. City of New York*, 390 F. Supp. 2d 372, 385 (S.D.N.Y. 2005) (finding that the City and individual officers were united in interest by virtue of their employer-employee relationship).

Plaintiff argues that the City and the individual officers are united in interest because of the City's statutory obligation under § 50-k of the General Municipal law to defend and

indemnify the officers. (Pl. Mem. 17–18.) Assuming § 50-k applies, the Court agrees that such a statutory obligation suffices to create the requisite unity of interest. Under New York General Municipal Law, the City is required to defend and indemnify its employees for alleged tortious conduct, so long as such conduct (1) occurred while the employee was acting within the scope of her employment, and (2) did not violate any rule or regulation of her agency at the time the alleged damages were sustained. N.Y. Gen. Mun. Law § 50-k(2)–(3). Although vicarious liability is "[t]he most frequently cited relationship creating a unity of interest," *Amaya*, 645 F. Supp. 2d at 122 (citing *Connell*, 443 N.Y.S.2d at 393), New York courts have also found that the duty to indemnify creates a unity of interest between parties, *see Austin v. Interfaith Med. Ctr.*, 694 N.Y.S.2d 730, 733 (App. Div. 1999) (finding that a party contractually bound to indemnify a hospital to be united in interest with the hospital); *see also Quiroz v. Beitia*, 893 N.Y.S.2d 70, 73 (App. Div. 2009) (citing *Austin* with approval). But as Defendants point out, (Def. Reply Mem. 4), after an investigation into the individual officers' conduct, the City *may* be required to decline representation. In such an instance, neither indemnification nor vicarious liability would apply and consequently, the officers and the City would not be united in interest.

However, assuming the allegations in the Complaint to be true, Plaintiff has raised an issue of fact as to whether the officers were acting within the scope of their employment and in accordance with agency rules and regulations such that they would be entitled to representation and indemnification by the City. Therefore, the Court cannot find that, as a matter of law, the officers and the City are not united in interest. *See Assad v. City of New York*, 656 N.Y.S.2d 669, 670 (App. Div. 1997) (finding that issues of fact precluded a determination that the individual officer was not acting within the scope of his employment and therefore, the court could not determine whether the officer was united in interest with the City); *Vazquez v. City of New York*,

629 N.Y.S.2d 475, 476 (App. Div. 1995) (finding that the City's Corporation Counsel's refusal to represent an officer did not, as a matter of law, require a finding that the officer and the City were not united in interest); *Sargent v. City of New York*, 513 N.Y.S.2d 194, 195 (App. Div. 1987) ("The affidavits submitted at Special Term raise a question of fact as to whether the appellant . . . was at that time acting outside the scope of his employment as a New York City police officer. Accordingly, whether the appellant is united in interest with his employer, the defendant City of New York (which was timely served with process) for Statute of Limitations purposes (CPLR 203[b]) cannot be determined at this juncture." (citations omitted)).[6]

With respect to the final prong of New York's general relation back doctrine, the Plaintiff argues that New York courts inquire as to whether a plaintiff's failure to add defendants was done in order to seek tactical advantage or in bad faith. (Pl. Mem. 18–19.) The City argues that notice to the defendant rather than bad faith on the plaintiff's part is the focus of this prong of New York's relation back doctrine. (Def. Reply Mem. 10–11.) The Court agrees with the City that the focus of this prong does not solely concern Plaintiff's conduct. *See Hunter*, 2013 WL 752193, at *6 (rejecting the plaintiff's argument that this prong of New York's relation back test

---

[6] The Court is aware of only one case in which a duty to indemnify did not create a unity of interest. In *Hilliard v. Roc-Newark Associates*, 732 N.Y.S.2d 421 (App. Div. 2001), the plaintiff commenced a negligence action against a licensor and later, after the statute of limitations had expired, attempted to add the licensee and actual owner and operator of the hotel where the plaintiff was injured. *Id.* at 422. The claims against the licensor were dismissed for lack of any factual basis for a finding of liability as the licensor did not own, occupy or operate the licensee's premises. *Id.* at 424. The licensee moved to dismiss the claims against it for untimeliness, and despite the licensee's duty to indemnify the licensor, the court held that the parties were not united in interest absent vicarious liability. *Id.* *Hilliard* is factually distinguishable from the instant action primarily because here, the City — the originally named party — has the duty to represent and indemnify the untimely-added officers whereas in *Hilliard*, the originally named party — the licensor — did not have a duty to indemnify the untimely-added defendant-licensee. In the instant case, the statutory duty of the City to indemnify its officers, even absent vicarious liability, is sufficient to create a unity of interest between the parties.

is satisfied "because he did not act in bad faith 'to gain some advantage over'"); *Amaya*, 645 F. Supp. 2d at 124 ("In the Court's opinion, the cases holding that the propriety of relation back hinges solely on bad faith read *Buran* too broadly."). In *Buran*, relied on by Plaintiff, the New York Court of Appeals explained the final prong of New York's relation back test, holding that the law only required that "the new party knew or should have known that, but for a mistake by plaintiff as to the identity of the proper parties, the action would have been brought against him as well." *Buran*, 87 N.Y.2d at 178. To the extent the *Buran* court discussed a plaintiff's bad faith, it suggested that a plaintiff may seek to obtain a tactical advantage "[w]hen a plaintiff intentionally decides not to assert a claim against a party known to be potentially liable," and under such a circumstance, "there has been no mistake and the plaintiff should not be given a second opportunity to assert that claim after the limitations period has expired." *Id.* at 181 (citation omitted). The City does not argue any such effort to obtain tactical advantage or bad faith on Plaintiff's part. Thus, the only remaining question is whether the City, and thus the individual officers, knew or should have known that the action would have been brought against the individuals officers but for a *mistake* as to the identity of the proper parties.

Plaintiff's failure to amend the Complaint, or request an extension of time to do so, is not the type of "mistake" contemplated by New York's relation back doctrine. Plaintiff offers no explanation for his failure to timely amend the Complaint to add the proposed defendants despite having knowledge of the individual defendants' potential liability by, at least, October 3, 2012. Instead, Plaintiff only argues that because he did not "*learn* the identity of ALL of these officers until on or about October 3, 2012 -- *eleven months* after plaintiff[] filed the complaint . . . plaintiff[] clearly [was] *not* acting intentionally or in bad faith . . . ." (Pl. Mem. 19.) Plaintiff's argument completely reads "mistake" out of the relation back doctrine. Here, by Plaintiff's own

representation, he knew of all of the proposed defendants over a month before the statute of

limitations expired on November 7, 2012. Absent any argument that there was a mistake as to

the proper parties, Plaintiff fails to satisfy this final prong of New York's relation back test. *See*

*Hunter*, 2013 WL 752193, at *6 ("[I]f indeed United's potential liability was brought to

plaintiff's attention within the limitations period, his failure to timely amend his complaint

cannot be considered a mistake . . . ."); *Abdell v. City of New York*, No. 05-CV-8453, 2006 WL

2620927, at *7 (S.D.N.Y. Sept. 12, 2012) ("Where a plaintiff fails to timely sue a potentially

liable party despite incriminating disclosures made within the statute of limitations, the Court

cannot find that a mistake was made for relation back purposes."); *Sloane v. Town of

Greenburgh*, No. 01-CV-11551, 2005 WL 1837441, at *4 (S.D.N.Y. July 27, 2005) (holding that

a *pro se* plaintiff's failure to timely substitute John Doe defendants with named defendants

before the statute of limitations was not a mistake under New York or federal law); *Goldberg v.

Boatmax://, Inc.*, 840 N.Y.S.2d 570, 571 (App. Div. 2007) ("[P]laintiff knew the identities of the

intended defendants and their role in the alleged wrongful disposition of property nearly one year

before he sought to add them to the action, and, accordingly, his failure to name them earlier

cannot be characterized as a mistake for relation-back purposes."); *Tucker*, 738 N.Y.S.2d at 36

("In this case, however, the failure to identify Lorieo in the original summons and complaint and

make timely service on him was not due to a mistake on the part of plaintiff in identifying the

proper parties. Rather, it was due to plaintiff's failure to timely request the hospital record and

ascertain Lorieo's identity."). Therefore, Plaintiff's proposed claims against the individual

officers would not relate back to the date of the original Complaint under § 203 of the CPLR.

### B. Rule 15(c)(1)(C) of the Federal Rules of Civil Procedure

Plaintiff's argument that his claims relate back pursuant to Rule 15(c)(1)(C) of the

Federal Rules of Civil Procedure is also unavailing. "Rule 15(c) of the Federal Rules of Civil

Procedure governs when an amended pleading 'relates back' to the date of a timely filed original pleading and is thus itself timely even though it was filed outside an applicable statute of limitations." *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 541 (2010). Under Rule 15(c)(1)(C), an amendment to a pleading to change the party against whom a claim is asserted will relate back if (1) "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading," (2) the parties to be brought in "received such notice of the action that it will not be prejudiced in defending on the merits," (3) those parties "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity," and (4) elements (2) and (3) were satisfied within 120 days of the filing of the original Complaint. *See* Fed. R. Civ. P. 15(c)(1)(C)(i)–(ii); *Barrow v. Wethersfield Police Dep't*, 66 F.3d 466, 468–69 (2d Cir. 1995).

In *Barrow*, the Second Circuit held that "the failure to identify individual defendants when the plaintiff knows that such defendants must be named cannot be characterized as a mistake."[7] *Barrow*, 66 F.3d at 470. *Barrow* remains good law, *see Hogan*, 738 F.3d at 518

---

[7] Courts in this Circuit have questioned whether *Barrow* remains good law in light of the Supreme Court's decisions in *Krupski*. *See, e.g.*, *Askins v.. City of New York*, No. 09-CV-10315, 2011 WL 1334838, at *1 n.3 (S.D.N.Y. Mar. 25, 2011) ("[T]he Supreme Court's decision in *Krupski* . . . has engendered a split in the district courts as to whether *Barrow* remains good law."). In *Krupski*, the Supreme Court held that "Rule 15(c)(1)(C)(ii) asks what the prospective defendant knew or should have known during the Rule 4(m) period, not what the plaintiff knew or should have known at the time of filing her original complaint." *Krupski*, 560 U.S. at 548. In *Hogan*, decided post-*Krupski*, the Second Circuit reaffirmed *Barrow* and held that "the lack of knowledge of a John Doe defendant's name does not constitute a 'mistake of identity'" satisfying Rule 15(c). *Hogan*, 738 F.3d at 518; *see also In re Vitamin C Antitrust Litig.*, --- F. Supp. 2d ---, ---, 2014 WL 351896, at *4 (E.D.N.Y. Jan. 31, 2014) ("The Second Circuit has recently reaffirmed *Barrow* . . . ."). To the extent that *Krupski* seemingly undermines *Barrow*, this Court is required to follow Second Circuit precedent and therefore understands that a "mistake" as

(citing *Barrow* affirmatively), and precludes this Court from finding that Plaintiff's failure to amend the Complaint to name the individual officers was a mistake contemplated by Rule 15(c). *See Anderson v. City of Mount Vernon*, No. 09-CV-7082, 2014 WL 1877092, at *4 (S.D.N.Y. Mar. 28, 2014) ("[Plaintiff's] proposed amendment naming Sergeant Marcucilli as a defendant after the statute of limitations had run does 'not correct a mistake in the original complaint, but instead supplie[s] information [Plaintiff] lacked at the outset.'" (second and third alterations in original) (citing *Barrow*, 66 F.3d at 470)); *Ulloa v. City of New York*, No. 13-CV-5795, 2014 WL 1100226, at *2 (S.D.N.Y. Jan. 6, 2014) ("Under the Second Circuit's decision in *Barrow v. Wethersfield Police Dep't*, a plaintiff who has named Jo[hn] Doe defendants, cannot take advantage of Rule 15(c)(1)(C), because a plaintiff's lack of knowledge as to the identity of John Doe defendants cannot be considered a 'mistake.'" (citation omitted)).  Therefore, Plaintiff's proposed claims against the individual officers would not relate back to the date of the original Complaint under federal law.  Accordingly, the Court denies Plaintiff's motion to amend the Complaint to substitute the names of the individual officers as such an amendment would be futile.

---

described in Rule 15(c) does not cover instances where a party fails to timely name a John Doe defendant.

### III. Conclusion

For the foregoing reasons, the Court grants Defendant's motion for summary judgment and denies Plaintiff's motion to amend the Complaint. The Clerk of Court is directed to close this case.

SO ORDERED:

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated: July 11, 2014
     Brooklyn, New York